UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KYLE EMMONS,**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**KNOX CAPITAL HOLDINGS, LLC, et al.,**<br><br>   **Defendants.** | **No. 15 C 2999**<br><br>**Magistrate Judge Mary M. Rowland** |

## MEMORANDUM OPINION AND ORDER

  Kyle Emmons initiated this lawsuit against Knox Capital Holdings, Alex E. Gregor, and Thomas P. Nugent in the Circuit Court of Cook County, Illinois, alleging claims for breach of contract, and in the alternative claims for promissory estoppel, quantum meruit, and unjust enrichment. The breach of contract, promissory estoppel, and quantum meruit claims are against Knox Capital and Gregor and the unjust enrichment claim is raised against all Defendants. On July 8, 2015, Defendants removed the action to this Court. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). On May 4, 2015, Defendants filed a Motion to Dismiss. For the reasons set forth below, the Motion is denied.

# I. FACTUAL ALLEGATIONS[1]

Emmons and Gregor are seasoned private equity investors, who have known each other professionally since 2011. (Compl. ¶¶ 1, 10, 11). In late 2013 and early 2014, Emmons and Gregor started working together on potential investment opportunities and to develop a new investment firm, now known as Knox Capital Holdings. (*Id.* ¶¶ 2, 13). Gregor formed Knox Capital in December 2013. (*Id.* ¶ 14). Throughout the first three quarters of 2014, Emmons and Gregor (and eventually Nugent) worked together on investment opportunities and, according to the Complaint, negotiated the cash compensation and carried interests each was to receive on completed transactions. (*Id.* ¶¶ 3, 16).

Contemporaneously, Knox Capital—through the efforts of Emmons, Gregor, and Nugent—pursued the company's first investment opportunity, Company A Investment. (Compl. ¶ 17). According to the Complaint, the parties agreed on the compensation that each would be entitled to in connection with the Company A Investment (Company A Compensation Agreement), which was reflected in a term sheet crafted by Emmons and Gregor. (*Id.* ¶¶ 18, 19). The Company A Compensation Agreement obligated Defendants to provide Emmons with multiple forms of compensation, including closing fees, annual monitoring fees, and carried interest. (*Id.* ¶ 20). In August 2014, Emmons, Gregor, Nugent, and Knox Capital successfully completed the Company A Investment. (Compl. ¶¶ 3, 22). On or about August 19, 2014, Knox Cap-

---

[1] The Court accepts as true all factual allegations in Plaintiff's Complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

ital paid to Emmons the closing fee described in the Company A Compensation Agreement. (*Id.* ¶ 22).

In the summer of 2014, the parties began working on a second investment opportunity, Company B Investment. (Compl. ¶ 23). The parties agreed to modify the terms regarding compensation in connection with future investments and, according to the Complaint, reached the Company B Compensation Agreement. (*Id.* ¶ 24). Shortly thereafter, in September 2014, while executing the Company B Investment, Defendants terminated Emmons. (*Id.* ¶¶ 3, 29). Emmons alleges that he has not received all the compensation he is entitled to under either the Company A Compensation Agreement or the Company B Compensation Agreement. (*Id.* ¶¶ 3, 30, 31).

## II. DISCUSSION

### A. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A Rule 12(b)(6) motion to dismiss must be considered in light of the liberal pleading standard of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations and alterations omitted). Determination of the sufficiency of a claim must be made "on the assumption that

all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis omitted).

**B. Breach of Contract (Counts I and V)**

Defendants contend that the breach of contract claims fail because the parties did not enter into binding contracts. (Dkt. 15 at 4–10). To maintain a breach of contract claim under Illinois law,[2] "a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach." *Kopley Grp. V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 226 (Ill. App. Ct. 2007); *accord Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Carpenter v. Sirva Relocation, LLC*, No. 11 C 7623, 2013 WL 6454253, at *4 (N.D. Ill. Dec. 9, 2013).

Emmons has sufficiently pleaded breaches of both the Company A Compensation Agreement (Count I) and the Company B Compensation Agreement (Count V). He alleges the existence of the contracts. (Compl. ¶¶ 19, 24, 33, 54). He further alleges that Knox and Gregor breached each contract. (*Id.* ¶¶ 22, 30, 31, 36, 57). Emmons alleges substantial performance on his part in the Company A Compensation Agreement: "Emmons performed all of his responsibilities pursuant to the Company A Compensation Agreement." (*Id.* ¶ 35). With regards to the Company B Compensation Agreement, Emmons alleges that he "play[ed] an integral role in closing of the

---

[2] The parties agree that Illinois law applies to this lawsuit. (*See* Dkt. 15 at 6; Dkt. 22 at 6), and the Court will not challenge the parties' choice of law. *Wood v. Mid-Valley, Inc.*, 942 F.2d 426, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); *accord Markin v. Chebemma Inc.*, 526 F. Supp. 2d 890, 893 (N.D. Ill. 2007).

Company B Investment" and "dutifully performed all his responsibilities pursuant to the Company B Compensation Agreement." (*Id.* ¶¶ 28, 56). Finally, Emmons alleges that he was damaged because of the unpaid compensation owed to him under the two contracts. (*Id.* ¶¶ 36, 37, 57, 58).

Defendants request that the Court consider certain Term Sheets they attached to their Motion to Dismiss. (Dkt. 15 at 4–5 & Exs. A–B). Defendants contend the Term Sheet demonstrate that because material terms were in flux, there were no binding contracts. (*Id.* at 5–6; *see* Dkt. 30 at 1–4).

Pursuant to Rule 12, if the court considers matters outside the pleadings presented in a motion to dismiss, the motion "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, "[d]ocuments are not 'matters outside the pleadings' within the meaning of Rule 12(d) if they are documents to which the Complaint had referred, that are concededly authentic, and that are central to the plaintiffs' claim, and therefore the court may consider such documents when ruling on a 12(b) motion without converting the motion to a motion for summary judgment." *TCC Historic Tax Credit Fund VII, L.P. v. Levenfeld Pearlstein, LLC*, No. 11 C 8556, 2012 WL 5949211, at *2 (N.D. Ill. Nov. 27, 2012) (alterations omitted) (citing *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012)).

Emmons does not challenge the Term Sheets' authenticity. Instead, he asserts that the Term Sheets are not the contracts under which he brings his claims. (Dkt.

22 at 7). Emmons contends that his claims relate to "valid oral contracts made prior to the formation of the term sheets." (*Id.*). Emmons acknowledges that "the July Term Sheet evidences the compensation *terms* upon which the parties had agreed under the Company A Compensation Agreement," but asserts that the Court should "disregard Defendants' arguments that the term sheets constitute the Company A and Company B Compensation Agreements." (*Id.* at 7–8).

A careful reading of the Complaint indicates it alleges that while some of the terms of the parties' contracts were "reflected" in the Term Sheets, the Term Sheets related to the parties' attempts at negotiating a *partnership* agreement, which is not the subject of the lawsuit. (Compl. ¶¶ 18–20). That said, the Court understands Defendants' frustrations with Plaintiff failing to indicate that he was relying on an oral contract theory and the confusion created by the Complaint's referencing the *written* term sheets. (Dkt. 30 at 1–5). But under the liberal pleading standard of the federal rules, "the plaintiff has considerable flexibility in pleading written and oral contracts." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1235, at 395 (3d ed. 2004). Under FRCP 8 it is "sufficient merely to allege that a contract exists." *Id.* Accordingly, because the Term Sheets are not "central" to Plaintiff's oral contract claim, the Court finds that it is not appropriate to consider them as part of this motion to dismiss.[3] *TCC Historic Tax Credit Fund*, 2012 WL 5949211, at *2.

---

[3] The Court states no opinion about the Term Sheets' impact on any subsequent motion for summary judgment.

Defendants argue that to the extent Plaintiff is relying on an oral contract, such an action is barred by the statute of frauds. (Dkt. 15 at 9–10; Dkt. 30 at 6–7). The Illinois Frauds Act requires certain contracts to be in writing and signed by the party to be bound. Thus, any agreement "that is not to be performed within the space of one year from the making thereof" must comply with the Frauds Act. 740 ILCS 80/1. "The test to determine if an agreement is subject to the one-year provision of the statute of frauds is whether, when it was made, it was capable of full performance within one year, not whether full performance was likely." *Silvestros v. Silvestros*, 563 N.E.2d 1084, 1086 (Ill. App. Ct. 1990); *see Richard Knorr Int'l, Ltd. v. Geostar, Inc.*, No. 08 C 5414, 2010 WL 3419504, at *3 (N.D. Ill. Aug. 25, 2010) ("By its terms, this payment schedule cannot be performed within the space of one year; it is therefore governed by § 80/1 of the Frauds Act.").

Defendants contend that an oral contract is barred because the Term Sheets provides for three years of carried interest payments. (Dkt. 15 at 9–10). But, as discussed above, the Court declines to consider the Term Sheets as part of Defendants' Motion to Dismiss. And the allegations in the Complaint, which rely on an oral contract, contain no specified terms that implicate the statute of frauds.

**C. Promissory Estoppel (Counts II and VI)**

Defendants contend that the promissory estoppel claims fail because the Complaint fails to allege that (a) Knox Capital made an unambiguous promise, (b) Emmons relied upon the promise, (c) Knox Capital knew of Emmons' reliance, and (d) Emmons suffered any detriment. (Dkt. 15 at 11–12; *see* Dkt. 30 at 11–12). Under

Illinois law, a promissory estoppel claim requires a plaintiff to prove that "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990); *accord Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005).

Emmons has sufficiently pleaded claims for promissory estoppel. The Complaint alleges that Knox Capital and Gregor promised Emmons that he would be compensated for his services in connection with both the Company A (Count II) and Company B (Count VI) Compensation Agreements. (Compl. ¶¶ 40, 61). The Complaint further alleges that in reliance on Knox Capital's and Gregor's promises, Emmons offered his time, expertise and services. (*Id.* ¶¶ 42, 63). Further, Knox and Gregor knew, and reasonably expected, that Emmons would rely on their promises. (*Id.* ¶¶ 41, 62). Finally, Emmons alleges that he relied on Knox Capital and Gregor's promises for months without receiving any compensation. (*Id.* ¶¶ 20–31, 42–43, 63–64).

Defendants argue that the Term Sheets' "open terms and its explicit statement that it is subject to further documentation" demonstrates that Knox and Gregor did not make *unambiguous* promises to Emmons. (Dkt. 15 at 11). But, as discussed above, the Court will not consider the Term Sheets at this early stage of the litigation. Defendants also argue that Emmons could not *reasonably* rely upon the alleged promises because Emmons admitted that the parties were still *negotiating* a

partnership agreement, which means that the terms were not yet final. But, for purposes of this Motion, the Court must accept that there was an oral contract regarding *compensation* and the *partnership* agreement is not the subject of this lawsuit.

**D. Quantum Meruit and Unjust Enrichment (Counts III, IV, VII and VIII)**

Defendants argue that Emmons's quantum meruit and unjust enrichment claims fail because the Complaint contains conclusory allegations without any specific factual allegations. (Dkt. 15 at 12–14). Both of these quasi-contract theories are based on a contract implied in law. *Midwest Emergency Associates–Elgin, Ltd. v. Harmony Health Plan of Illinois, Inc.*, 888 N.E.2d 694, 701 (Ill. App. Ct. 2008). Quantum meruit and unjust enrichment actions are similar, in that the "plaintiff must show that valuable services or materials were furnished by the plaintiff, received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004); *see Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990); *Sys. Dev. Integration, LLC v. Computer Sciences Corp.*, No. 09 CV 4008, 2012 WL 3204994, at *2 (N.D. Ill. Aug. 3, 2012). "The measure of recovery for a quantum meruit action is the reasonable value of the work and material provided, while in an unjust enrichment action, the inquiry focuses on the benefit received and retained as a result of the improvement provided by the [plaintiff]." *Stark Excavating, Inc. v. Carter Const. Servs., Inc.*, 2012 IL App (4th) 110357, ¶ 37, 967 N.E.2d 465, 474 (citation omitted).

Emmons has sufficiently pleaded claims for quantum meruit and unjust enrichment. The Complaint alleges that Emmons performed services which benefited Knox Capital and Gregor, including conducting due diligence efforts and analyses; coordinating third party providers; arranging, negotiating, and structuring debt financing; managing investor communication and regulatory filings; and negotiating key terms with sellers. (Compl. ¶ 28). The Complaint further alleges that Emmons did not perform these services gratuitously and expected compensation for the Company A and Company B transactions. (*Id.* ¶¶ 18–22, 24–27, 47, 68, 72). Defendants promised Emmons that in exchange for working on successful Company A and Company B investments, he would be entitled to compensation. (*Id.* ¶¶ 21, 27). For Defendants to retain the benefit of Emmons's services without paying him violates "fundamental principles of justice, equity and good conscience." (*Id.* ¶¶ 52, 73).

**E. Gregor and Nugent**

Defendants contend that Gregor and Nugent cannot be personally liable for Knox Capital's liabilities. (Dkt. 15 at 14–15). Defendants argue that members of a limited liability company, like Knox Capital, cannot be liable for the LLC's debts and obligations. (*Id.* at 14). Defendants also assert that as agents, Gregor and Nugent cannot be liable for the principal's contractual breaches. (*Id.* at 14–15). After careful review of the Complaint, the Court disagrees.

The Complaint does not allege that Emmons's contractual relationship was solely with Knox Capital. On the contrary, the Complaint alleges that a contractual relationship was created with both Knox Capital and Gregor. (Compl. ¶¶ 33, 54). As to

Emmons's unjust enrichment claims against Nugent, the Complaint alleges that Nugent, as a principal of Knox Capital, personally retained the benefits of Emmons's services in connection with the Company A and Company B transactions. (Compl. ¶¶ 15, 20, 21, 25, 26, 27, 30, 31, 52, 73). That is all that is necessary at this early stage of the proceedings.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [14] is **DENIED**. Defendants are given until November 13, 2015, to file an answer to the Complaint.

E N T E R:

Dated: October 16, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge